

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

**UNITED STATES OF AMERICA**

v.                                       **CRIMINAL COMPLAINT**

**MOHD ABU-JAMOUS**          CASE NUMBER: 11-2267 MEM

I, the undersigned complainant, being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about May 3, 2011, defendant(s),

MOHD ABU-JAMOUS, did knowingly, intentionally and unlawfully manufacture and possess with intent to distribute a mixture or substance containing a detectable amount of JWH-018 and JWH-073, Schedule I controlled substances, in violation of 21 U.S.C. §841

in the District of Maryland in the United States of America.

I further state that I am a <u>Special Agent of the Drug Enforcement Administration</u>, and
Official Title

that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:   ☑ Yes   ☐ No


_____
David Shields, Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

May 27, 2011      3:48 p.M.      at      Baltimore, Maryland
Date and Time Issued

_____
Mildred E. Methvin, United States Magistrate Judge

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

This affidavit is made in support of an application for a criminal complaint charging Mohd ABU-JAMOUS with manufacture and possession with intent to distribute controlled substances, to wit : JWH-018 and JWH-073, Schedule I controlled substances.

Your affiant, Special Agent David Shields of the Drug Enforcement Administration (DEA), United States Department of Justice, has been a DEA special agent since 1991, and has participated in many investigations involving violations of controlled substances laws of the United States of America, and has participated in the execution of numerous federal and state search warrants that have targeted violations/violators of the federal narcotics laws. Your affiant has participated in the arrest of many persons for violations of federal and state narcotics laws. Through hundreds of surveillances and interviews, your affiant is also familiar with the activities of and terminology utilized by traffickers of controlled dangerous substances. Your affiant has received extensive training in the area of narcotics trafficking.

The following information is known to me through personal observation, through discussions with other agents and officers including Howard County Detective Zachary Cerrone and through an earlier affidavit sworn to by Detective Cerrone.

On or about May 3, 2011, U.S. Postal Inspectors, DEA agents, and State and local police were notified of suspicious parcels being received throughout the Baltimore area at various UPS Store locations. These parcels were suspicious because while they were addressed to specific UPS Stores, the parcels were not addressed to specific mailboxes at the UPS Stores. (UPS Stores offer a service where a customer can lease a mailbox and thereby have his/her mail delivered to that mailbox at the UPS Store.) Instead, these parcels, which were all similar in size and packaging, were addressed to businesses which had no mailboxes at the UPS Stores or any other business arrangement with the UPS Stores for the reception of such parcels. Parcels addressed in such a manner are in violation of USPS regulations that require mail sent to businesses such as UPS Stores to be addressed to specific mailboxes. According to the parcels' address labels, all parcels had been sent from China, which as outlined above is a source country for illegal substances imported into the United States.

On May 3, 2011, a representative of the United Parcel Service (UPS) contacted the Howard County Police because two females were then in a UPS store attempting to pick up such a suspicious package. Once the police responded to that store, the two females were questioned by patrol officers. One female identified herself as Blair Beebe, and stated that she had been hired by an individual she identified as "MOE" to pick up packages from different UPS stores in the area. She said that, when she was done with her route, she had been instructed to respond to 10620 Old National Pike, New Market, Maryland where she was to ask for "Raul" who would take custody of the parcels. The patrol officer then inspected the package which was still in the UPS Store, and found it to contain five bags of an off-white powder substance. Chemical analysis of that white powder is pending.

That same day, Howard County Police applied for and obtained a Maryland search and seizure warrant targeting a warehouse located at 10620 Old National Pike in New Market (Frederick County), Maryland. When that warrant was executed, the seizing agents recovered, among other things, 66 boxes containing assorted plastic bags all containing a green vegetable matter having a weight in excess of 300 kilograms. A sample taken from one of the plastic bags was later analyzed by a certified forensic DEA chemist and was found to contain JWH-018, a

Schedule I controlled substance. In addition, a sample of white powder recovered from plastic bags at the warehouse was tested by the DEA Laboratory and found to contain JWH-073.

On March 1, 2011, the Administrator of the Drug Enforcement Administration (DEA) issued a final order which placed five synthetic cannabinoids into the Controlled Substances Act (CSA) pursuant to the temporary scheduling provisions of 21 U.S.C. § 811(h). The substances are JWH-018, JWH-073, JWH-200, CP-47,497, and CP-47,497 C8 homologue. That action was based on a finding by the Administrator that the placement of these synthetic cannabinoids into Schedule I of the CSA was necessary to avoid an imminent hazard to the public safety. As a result of this order, the full effect of the CSA and its implementing regulations including criminal, civil and administrative penalties, sanctions and regulatory controls of Schedule I substances were imposed on the manufacture, distribution, possession, importation, and export of these synthetic cannabinoids. In sum, JWH-018 and JWH-073 are now Schedule I controlled substances, akin to a synthetic form of THC, the active ingredient in marijuana.

Located at the warehouse when the search warrant was executed was Raul Martinez-Diaz. Martinez-Diaz was debriefed, and said that he had been hired by an individual he knew as "Moe". Moe explained to Martinez-Dias how acetone, the white powder and green vegetable matter are combined and then packaged and distributed. Martinez-Dias understood the processing to be one of cleaning the green vegetable matter. It was this white powder found at the warehouse that DEA forensic chemists determined contained JWH-073.

Your affiant is familiar with a fairly recent trend by drug abusers to ingest a substance colloquially referred as "Spice" or "K2". "Spice" and "K2" can be ingested in the same fashion as a marijuana cigarette. JWH-018 and JWH-073 are two of five substances that are called "Spice" and K-2 when combined with green vegetable matter, and both were added to Schedule I only on March 1, 2011. The appeal of "Spice" and "K2" to drug abusers was that, until the DEA's March 1, 2011 order, it was not illegal federally to possess, distribute or manufacture those substances.

Based on further investigation, on May 9, 2011, a subpoena was issued to the New Market Mini Storage requesting records pertaining to the rental of storage locker #3019 in the name of Mohd Nazzal ABU-JAMOUS. The storage locker is located in close geographic proximity to the warehouse from which the JWH-018 and JWH-073 were seized. According to business records, the rental agreement for that storage locker was signed by a Mohd ABU-JAMOUS, who had confirmed his identity with a Virginia driver's license.

A search warrant was obtained and executed on storage locker #3019 that measured 10 x 30 feet. Found in the storage locker were 120 burlap bags containing a green vegetable material identical to the vegetable matter seized from the above-described warehouse, except that the some of the vegetable matter recovered from the warehouse had been treated with the white powder and acetone. Samples have been taken from those burlap bags and are awaiting analysis by the DEA Laboratory.

On May 26, 2011, an agent associated with this investigation showed to Raul Martinez-Diaz a photo array of six individuals, one of which was Mohd ABU-JAMOUS. Martinez-Diaz identified ABU-JAMOUS as the individual he knew as "Moe" who had directed the manufacture/distribution operations at the above-described warehouse.

Based on the foregoing, your affiant submits that there is probable cause to believe that Mohd ABU-JAMOUS was engaged in the manufacture and distribution of Schedule 1 controlled dangerous substances, to wit; JWH-018 and JWH-073 in violation of Title 21 USC Section 841.

Your affiant affirms under penalties of perjury that the foregoing affidavit is true and accurate to the best of his knowledge and belief.

_____
David Shields, Special Agent
Drug Enforcement Administration


Sworn to and subscribed before me this 27th day of May 2011.

_____
Mildred E. Methvin
United States Magistrate Judge